United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ALTO VELO RACING CLUB,

Plaintiff,

v.

ROULEUR SPORTS GROUP, LLC, BOBBY SWEETING,

Defendants.

Case No. 5:15-cv-02144-PSG

**ORDER SETTING ASIDE DEFAULT AND DENYING JUDGMENT, INJUNCTIVE RELIEF AND FEES**

**(Re: Docket Nos. 19, 23)**

This case centers on three parties, two bicycle racing clubs, and one line of bicycle racing wheels. And one unregistered trademark. Unhappy with what it sees as trademark infringement, cybersquatting and unfair competition, Plaintiff Alto Velo Racing Club ("AVRC") asks the court to permanently enjoin Defendants Rouleur Sports Group, LLC ("Rouleur") and Bobby Sweeting from using the mark ALTO VELO, or in the alternative, call a time out and issue a preliminary injunction.[1] Defendants move to set aside the defaults entered against them by the Clerk of Court.[2]

[1] *See* Docket No. 19 at 1.

[2] *See* Docket Nos. 16, 17, 23.

They also move to dismiss for lack of personal jurisdiction and challenge venue.[3] Because Sweeting was never properly served, and because Rouleur has not behaved with culpable conduct, their motion to set aside entry of default is GRANTED. Because the court lacks personal jurisdiction over Sweeting, AVRC's claims against him are DISMISSED. Because entry of default is set aside and genuine issues of material fact exist, AVRC's motion for default judgment is DENIED and AVRC's motion for permanent injunction is DENIED. Because AVRC has failed to show either a sufficient likelihood of success on the merits or irreparable harm on its Lanham Act, Anti-Cybersquatting Consumer Protection Act and California unfair competition claims, its motion for preliminary injunctions is DENIED. Because AVRC has neither prevailed nor shown that this case is exceptional under the Lanham Act or ACPA, AVRC's motion for fees and costs is DENIED.

**I.**

AVRC has operated a bicycle racing club in California for over 20 years.[4] AVRC has used the unregistered mark ALTO VELO in connection with its club, racing team and sponsorship opportunities since 1992.[5] Sweeting operates a bicycle wheel company that makes and sells "high performance racing wheel sets" under the name Alto Velo.[6] Rouleur operates a professional racing team under the name "Alto Velo-SeaSucker Factory Racing Team," which is sponsored by Sweeting's wheel company.[7]

When AVRC recently learned of Sweeting's wheels and Rouleur's team, it requested that they discontinue the use of the name ALTO VELO.[8] AVRC expressed particular concern that

---

[3] *See* Docket No. 23 at 14-15, 23-24.

[4] *See* Docket No. 19 at 2.

[5] *See id.* at 2-5.

[6] Docket No. 29 at 1, 20-21.

[7] *See* Docket No. 19 at 4.

[8] *See id.* at 5-6.

Defendants' use of ALTO VELO competes with AVRC's sponsors and causes confusion in the marketplace.[9] After negotiations broke down, AVRC filed this lawsuit.[10] Great confusion ensued as to whether Defendants were represented by counsel and whether they were served with the summons and complaint.[11] At AVRC's request,[12] the Clerk of Court entered default against both Defendants.[13]

Defendants move to set aside default and to dismiss for lack of personal jurisdiction.[14] They also challenge venue.[15] AVRC moves for default judgment under Fed. R. Civ. P. 55, summary judgment under Fed. R. Civ. P. 56, permanent or at least preliminary injunctions under the Lanham Act, ACPA and California unfair competition law, and fees and costs.[16]

**II.**

The court has subject matter jurisdiction under 28 U.S.C. § 1331. The parties consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[17]

Defendants' motion raises the following procedural issues: the standard for setting aside default under Rule 55(c), personal jurisdiction and venue.

Fed. R. Civ. P. 55(c) allows an entry of default to be set aside upon a showing of good cause. This is because "judgment by default is a drastic step appropriate only in extreme

---

[9] *See id.*

[10] *See* Docket No. 1.

[11] *Cf.* Docket No. 31 at 3-4 *with* Docket No. 23 at 8-10.

[12] *See* Docket Nos. 14, 15.

[13] *See* Docket Nos. 16, 17.

[14] *See* Docket No. 23.

[15] *See id.* at 14-15.

[16] *See* Docket No. 19.

[17] *See* Docket Nos. 9, 26.

circumstances; a case should, whenever possible, be decided on the merits."[18] Therefore, when deciding whether there is good cause, the court must consider "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party."[19]

Under the first *Falk* factor, conduct is culpable when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."[20] A merely "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' . . . and is therefore not necessarily . . . culpable."[21]

The standards for the second and third *Falk* factors are similarly undemanding. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense."[22] "'To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case.'"[23]

When a motion challenging personal jurisdiction is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts,[24]

---

[18] *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

[19] *Mesle*, 615 F.3d at 1091 (internal quotations omitted, alterations in the original).

[20] *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001), *overruled in part on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

[21] *TCI Group*, 244 F.3d at 697-98.

[22] *Mesle*, 615 F.3d at 1094.

[23] *Id.* at 1095 (quoting *TCI Group*, 244 F.3d at 701).

[24] *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

and the court accepts as true uncontroverted allegations in the complaint and resolves factual conflicts in the parties' affidavits in favor of the party asserting jurisdiction.[25]

For the exercise of personal jurisdiction over a defendant, due process requires that the defendant "have certain minimum contacts" with California "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[26] In the Ninth Circuit, courts apply a three-part test to determine whether specific jurisdiction comports with due process: (1) the non-resident must purposefully direct its activities or consummate a transaction with the forum state or a resident, or purposefully avail itself of the forum and thereby invoke the benefits and protections of its laws; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.[27] The plaintiff bears the burden of satisfying the first two prongs, and if the plaintiff succeeds, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable.[28]

28 U.S.C. § 1391 governs venue, and among its many provisions, it establishes that venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."[29]

AVRC's motion implicates the standards for granting injunctive relief under the Lanham Act, ACPA and California unfair competition law.

In order to receive a preliminary injunction, a plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public

---

[25] *See Action Embroidery Corp. v. Action Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).

[26] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[27] *See Schwarzenegger*, 374 F.3d at 802.

[28] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

[29] 28 U.S.C. § 1391(b)(2).

**United States District Court**
For the Northern District of California

interest."[30] This is not a low threshold: in the trademark context, likelihood of success requires showing that the plaintiff is "'(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar name.'"[31] Furthermore, it is the plaintiff's burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction," and not merely a "possibility."[32] "Gone are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm.'"[33]

In the Ninth Circuit, likelihood of confusion in a trademark action is evaluated by the eight-factor *Sleekcraft* test.[34] The factors are "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines."[35] The test is "'pliant. Some factors are much more important than others, and the relative importance of each individual factor will be case-specific.'"[36]

The ACPA establishes liability for cyberpiracy where the plaintiff has a valid, distinctive or famous trademark; the defendant registers, traffics in, or uses an identical or confusingly similar

---

[30] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[31] *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Grocery Outlet v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (per curiam)).

[32] *Winter*, 555 U.S. at 22 (emphasis in original).

[33] *Herb Reed*, 736 F.3d at 1250 (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987)).

[34] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) *abrogated by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

[35] *Id.* at 348-49.

[36] *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 792 F.3d 1070, 1076 (9th Cir. 2015) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)).

domain name; and the defendant does so with "bad faith intent to profit from that mark."[37] Bad faith may be found by factors laid out by statute at Section 1125(d)(1)(B)(i)(I)-(IX).

**III.**

Applying the standards set out above, the parties' motions are resolved as follows.

***First***, the entry of default is set aside as to both Defendants. Each of the *Falk* factors suggests as much.

As to the first factor, Sweeting has offered a "credible, good faith explanation" for his failure to answer, which is "inconsistent with a devious, deliberate, willful, or bad faith failure to respond."[38] Sweeting was never properly served with the complaint under Fed. R. Civ. P. 4(e)(2), which allows for personal service, service at a party's usual place of abode, or service to a service agent. Sweeting also was not served under Cal. Civ. Proc. Code § 415.20(b), which allows for service by leaving a copy of the complaint and summons at a party's usual place of business with "a person apparently in charge of his or her office." AVRC's process server left the summons and complaint with Lori Robinson, an employee of Datum Corporation, at 6009 Business Boulevard, Sarasota, FL, 34240, and mailed a copy to Sweeting at that address.[39] AVRC states that 6009 Business Boulevard was the address given for Sweeting on the Florida Secretary of State's website, in Sweeting's capacity as a manager of Rouleur.[40] AVRC thus believed that leaving the complaint with Lori Robinson constituted service under Section 415.20.

But it is uncontested that Sweeting does not have an office at 6009 Business Boulevard, that it is not his usual place of business, and that Robinson has never been employed by Sweeting, Rouleur, or any business owned by Sweeting.[41] Accordingly, even if Sweeting was on notice of

---

[37] 15 U.S.C. § 1125(d).

[38] *TCI Group*, 244 F.3d at 697-98.

[39] *See* Docket No. 23 at 9.

[40] *See* Docket No. 31 at 3.

[41] *See* Docket No. 23 at 10.

the lawsuit as AVRC contends, his failure to respond to the complaint still does not constitute culpable conduct under *Falk*.[42] When a party has not been served with a summons and complaint, it may reasonably believe that it has no obligation to respond, and this explanation shows no "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."[43]

Nor does Rouleur's failure to answer the complaint constitute culpable conduct. It is unclear why Rouleur states that it did not understand that it had been served[44] but does not contest that it was served.[45] Nonetheless, the Ninth Circuit has stated that "simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of" denying the motion to set aside default, and the second and third *Falk* factors weigh in favor of Rouleur.[46]

The second *Falk* factor asks whether the parties have no meritorious defense. Sweeting has a meritorious defense based on personal jurisdiction. Rouleur also has alleged sufficient facts that, if true, would constitute a defense to trademark infringement. These facts are discussed in detail below in the court's consideration of AVRC's likelihood of success on the merits in this case.

The third *Falk* factor asks whether setting aside default would prejudice AVRC. AVRC has not shown any prejudice: it argues that Defendants' conduct has delayed AVRC from receiving an injunction and prosecuting the case, and forced AVRC to incur greater fees.[47] AVRC also

---

[42] AVRC also argues that Sweeting's prior counsel agreed to accept service on Sweeting's behalf. However, AVRC admits that counsel subsequently reneged, at which point AVRC left the summons and complaint with Robinson. *See* Docket No. 31 at 4.

[43] *TCI Group*, 244 F.3d at 697.

[44] *See* Docket No. 23 at 12.

[45] *See* Docket No. 31 at 3.

[46] *See Mesle*, 615 F.3d at 1092.

[47] *See* Docket No. 31 at 11.

argues that Defendants' defenses are meritless, and that being forced to respond is prejudicial.[48] There has been no significant delay in AVRC's prosecution of the case; only four months have passed since the complaint was filed.[49] AVRC's remaining points fail in light of the 9th Circuit's caution that "merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment."[50]

***Second***, the court may exercise personal jurisdiction over Rouleur, but not Sweeting. Sweeting is a resident of North Carolina lacking sufficient minimum contacts with California to establish personal jurisdiction.[51] AVRC argues that Sweeting's company's website, altovelo.com, provides a basis for personal jurisdiction over Sweeting, because in theory, California residents could buy Sweeting's company's wheels through altovelo.com and have them shipped to California.[52] While it is true that personal jurisdiction over an out-of-state entity may be "appropriate when an entity is conducting business over the Internet,"[53] AVRC fails to distinguish between Sweeting, an individual, and Alto Velo, his wheel company. Because the company Alto Velo—and not Sweeting—operates the e-commerce website altovelo.com, altovelo.com may give rise to personal jurisdiction as to the company Alto Velo, but not to Sweeting. AVRC therefore fails to make a prima facie showing that Sweeting has purposefully availed himself of California and that the claim arises out of such availment.

In contrast, personal jurisdiction exists over Rouleur because it has raced several times in California this year under the name "Alto Velo-SeaSucker Factory Racing Team."[54] This activity

---

[48] *See id.*

[49] *See* Docket No. 1 (complaint filed May 13, 2015).

[50] *TCI Group*, 244 F.3d at 701.

[51] *See* Docket No. 23 at 23-24.

[52] *See* Docket No. 31 at 2.

[53] *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999).

[54] *See* Docket No. 31 at 2.

satisfies the three-factor *Schwarzenegger* test for personal jurisdiction, as Rouleur purposefully availed itself of California and its laws by coming here to participate in races, and AVRC's claim arises out of Rouleur's use of "Alto Velo-SeaSucker Factory Racing Team" here in connection with a cycling team.[55] Once the first two *Schwarzenegger* factors are satisfied, Rouleur has the burden of showing that the exercise of jurisdiction would not be reasonable, and it has failed to make any such argument.

***Third***, venue is appropriate in this district as to Rouleur. AVRC's claim against Rouleur arises out of Rouleur's use of the name "Alto Velo-SeaSucker Factory Racing Team," and Rouleur raced under that name this year in San Rafael, Berkeley, Los Altos, and Monterey.[56] Accordingly, a "substantial part of the events . . . giving rise to the claim occurred" in this district.[57]

***Fourth***, preliminary injunctions on AVRC's Lanham Act claims for trademark infringement and false designation and false description are inappropriate at this juncture, because AVRC has not shown a sufficient likelihood of success or likelihood of irreparable harm.

In order to show a likelihood of success on the merits of the Lanham Act claims, AVRC must show that it has a valid mark and that Defendants' use of the mark creates a likelihood of confusion. AVRC's first obstacle to establishing a likelihood of success is that there is dispute over what AVRC's mark is and whether it is valid. AVRC's mark is unregistered, and so it bears the "burden of proof of establishing a valid mark."[58] AVRC states that its mark is ALTO VELO, and that it has acquired the mark by using the ALTO VELO mark in connection with operating a bicycle racing team and promoting cycling-related goods and services for over 20 years.[59]

---

55 *See id.*

56 *See id.*

57 28 U.S.C. § 1391(b)(2).

58 *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005).

59 *See* Docket No. 19 at 2-3, 8.

United States District Court
For the Northern District of California

However, AVRC neglects to provide evidentiary examples of the actual use of its mark. At the same time, Defendants proffer evidence calling into question whether AVRC actually uses the mark ALTO VELO in connection with the operation of a bicycle racing club. As Defendants point out, AVRC's full name as stated on its Facebook page and website is "Alto Velo Racing Club;"[60] AVRC's team name as listed on the USA Cycling website is "SunPower Racing;"[61] and AVRC instructs its members to register under the team name "SunPower Racing."[62] However, AVRC's team jerseys bear the mark ALTO VELO, although the name SUNPOWER is more prominently displayed[63]:




The second obstacle to a likelihood of success is the set of *Sleekcraft* factors, which either weigh in favor of Defendants or currently lack sufficient evidence for evaluation. The first factor, the strength of the mark, weighs against AVRC. "Marks are often classified in categories of

---

60 *See* Docket No. 29-2, Morando Decl. Ex. A; Docket No. 23-5 at 17, Morando Decl. Ex. F.

61 *See* Docket No. 23-5 at 34, Morando Decl. Ex. J.

62 *See* Docket No. 29 at 10-11.

63 Docket No. 23-5, at 23, Morando Decl. Ex. H.

generally increasing distinctiveness; following the classic formulation . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."[64] "A generic mark is the least distinctive, and an arbitrary or fanciful mark is the most distinctive. . . . The more distinctive a mark, the greater its conceptual strength."[65] Given that the parties contest what the mark is, it is difficult to evaluate the distinctiveness of the mark and therefore whether it is strong or weak.

The second factor, proximity of the goods, also weighs against AVRC. Sweeting uses the term "Alto Velo" in connection with selling bicycle wheels and Rouleur uses the term "Alto Velo-SeaSucker Factory Racing Team" in connection with a racing team.[66] AVRC uses the term "Alto Velo Racing Club" to describe its club, and the name "SunPower Racing Team" in connection with its team.[67] The only locus of potential confusion is Sweeting's "Alto Velo" wheels and AVRC's "Alto Velo Racing Club," since the two racing teams operate under dissimilar names. It is true that bicycle wheels and a bicycle racing club both relate to bicycles; however, Sweeting only sells wheels and does not operate a bicycle racing club, while AVRC only operates a bicycling club and does not sell wheels. AVRC argues that it has sponsors that sell wheels.[68] However, AVRC offers no evidence that those sponsors use the mark ALTO VELO on their wheels or in promoting their wheels, creating little opportunity for a likelihood of confusion based on the use of ALTO VELO in connection with Sweeting's wheels and AVRC's sponsor's wheels.[69]

The third factor, similarity of the marks, cannot be evaluated until the nature of the mark is firmly settled.

---

[64] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

[65] *M2 Software, Inc., a Delaware corporation v. Madacy Entm't, a corporation*, 421 F.3d 1073, 1080 (9th Cir. 2005) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000)).

[66] *See* Docket No. 19 at 4.

[67] *See* Docket No. 29 at 10.

[68] *See* Docket No. 19 at 9.

[69] *See* Docket No. 29 at 12 n.12.

The fourth factor, evidence of actual confusion, favors Defendants, because AVRC has submitted no evidence of actual confusion. AVRC's primary evidence, the declaration of Alto Velo Racing Club president Karen Brems, describes the activities of Alto Velo Racing Club and the Alto Velo-SeaSucker Factory Racing Team and presents scenarios for possible confusion, but provides no evidence of actual confusion.[70]

As to the fifth factor, the marketing channels used, there is little likelihood of confusion. There is no evidence that AVRC and Sweeting sell competing products. While AVRC and Rouleur both operate cycling teams and may compete for members, they are located in California and Florida respectively, making it unlikely. More to the point, neither side has presented evidence of confusion due to similarity of marketing channels.

The sixth factor, the type of goods and the degree of care likely to be exercised by the purchaser, weighs in favor of Defendants. Sweeting sells expensive bicycle wheels, while AVRC engages in promoting bicycle racing, riding, and safety, and so there are no goods to confuse.[71] Additionally, "when goods are expensive, purchasers can be expected to exercise greater care."[72] Any consumer seeking a local bicycling organization to join in Silicon Valley is unlikely to mistakenly purchase an expensive wheel set due to confusion over the ALTO VELO mark, and vice versa.

The seventh factor, Defendants' intent in selecting the mark, weighs in favor of Defendants. AVRC provides the following quotation from Sweeting to show that he had knowledge of Alto Velo Racing Club at the time he chose "Alto Velo" for his company name: "We obviously went online and Googled it straightaway. . . . The club popped up, and we were like, 'Oh, it's a club in Northern California, we're a wheel manufacturer in Florida. No problem.' So we just moved forward."[73] While this quote shows that Sweeting had prior knowledge of Alto Velo Racing Club,

---

[70] *See* Docket No. 18-1 at ¶¶ 40, 41, 42, 56, 57.

[71] *See* Docket No. 19 at 3-4.

[72] *Multi Time Mach., Inc.*, 792 F.3d at 1080.

[73] Docket No. 31 at 12.

it also suggests that he believed his use of the name "Alto Velo" would be harmless due to the dissimilarity in the parties' businesses and their geographical distance. The evidence currently available does not support a finding of bad intent.

The final factor is the likelihood of expansion of the product lines. There is no evidence as to this factor from either party.

In summary, the *Sleekcraft* factors show that there is currently insufficient evidence to find that Defendants' use of ALTO VELO in connection with bicycle wheels and the Alto Velo-SeaSucker Factory Racing Team is likely to cause confusion with AVRC's Alto Velo Racing Club.

The second part of the preliminary injunction test requires AVRC to show that absent an injunction, irreparable harm is likely. AVRC has not proffered "evidence sufficient to establish a likelihood of irreparable harm."[74] AVRC argues that absent an injunction, it will decide to change its name, Defendants will benefit from AVRC's goodwill, and AVRC will lose sponsorships and members.[75] However, Defendants' unjust benefitting from unearned goodwill and AVRC's loss of sponsorship and members are redressable by money damages. As to AVRC's decision to change its name, AVRC has not shown that there is sufficient likelihood of confusion to make that change necessary. Nor has AVRC proffered sufficient evidence to show that such a change is likely.

The balance of the equities and the public interest also weigh against a preliminary injunction. AVRC has used its name continuously for over 20 years, and that the use has been public and notorious.[76] However, use alone does not cause the equities to favor AVRC; were it so, then every trademark plaintiff would receive injunctive relief. The nature of AVRC's mark is in dispute and they have not shown that they would suffer irreparable harm or even confusion without a preliminary injunction. In contrast, a preliminary injunction would pose significant burdens on Defendants, as they would have to cease operating or rebrand themselves immediately. Similarly,

---

[74] *Herb Reed Enterprises*, 736 F.3d at 1251.

[75] *See* Docket No. 31 at 19.

[76] *See* Docket No. 19 at 9, 21.

United States District Court
For the Northern District of California

the public interest favors Defendants: AVRC has not presented any reason why an injunction would serve the public interest.[77] While Defendants' argument that an injunction would damage the public's interest in being able to purchase "an innovative new product" is a bit much,[78] this interest, however slight, tips in favor of Defendants in the face of AVRC's silence.

***Fifth***, a preliminary injunction on AVRC's ACPA claim is inappropriate because AVRC again has not shown a sufficient likelihood of success or likelihood of irreparable harm. In order to show a likelihood of success, AVRC must show that Sweeting had a bad faith intent to profit from AVRC's mark when he registered, trafficked in, and used the URL altovelo.com. As a threshold matter, the parties contest the nature, validity and distinctiveness of AVRC's mark, and there is insufficient evidence before the court to resolve that dispute at this time. There also is insufficient evidence to show that Sweeting had a bad faith intent to profit from AVRC's mark under the factors laid out in the ACPA. AVRC offers no evidence showing that Sweeting intended to divert consumers from AVRC's site to his own or that his site harms the goodwill represented by AVRC's mark.[79] Sweeting has not offered to transfer, sell, or otherwise assign altovelo.com to AVRC or any third party, and he uses altovelo.com in the "bona fide offering" of goods for sale.[80] AVRC does not allege that Sweeting provided false contact information when registering for altovelo.com or that he registered multiple domain names identical or confusingly similar to AVRC's mark.[81] Accordingly, AVRC has not yet shown that Sweeting's conduct satisfies the elements for an ACPA claim, and so AVRC has not shown a likelihood of success on the merits.

For the same reasons as discussed under the Lanham Act claims, AVRC has not shown that irreparable harm is likely absent a preliminary injunction, making injunctive relief inappropriate on

---

77 *See* Docket No. 29 at 7.

78 Docket No. 29 at 22.

79 *See* 15 U.S.C § 1125(d)(1)(B)(i)(V).

80 15 U.S.C § 1125(d)(1)(B)(i)(VI).

81 *See* 15 U.S.C. § 1125(d)(1)(B)(VII)-(VIII).

United States District Court
For the Northern District of California

the ACPA claim. The balance of the equities and the public interest also favor Defendants under the ACPA claim. AVRC has shown no actual or irreparable harm from the existence of Sweeting's website, while Sweeting uses altovelo.com to sell products and doubtlessly would suffer loss of customers if enjoined from using this domain name. Similarly, as discussed above, while the public's interest in having these wheels available for sale may be slight, in the absence of a countervailing explanation from AVRC, the public interest factor weighs against injunctive relief.

***Sixth***, a preliminary injunction on AVRC's California unfair competition claim also is inappropriate. Cal. Bus. & Prof. Code §§ 17200 and 17203 allow a party to seek an injunction against unfair competition. AVRC argues that California law has a lower standard for injunctive relief than federal law.[82] However, injunctive relief under California's unfair competition law, as under federal law, "is subject to fundamental equitable principles, including inadequacy of the legal remedy."[83] AVRC has not shown that its harms are irreparable, and it also has not shown the elements of the Lanham Act and ACPA claims necessary to show a violation of California's unfair competition law.

***Seventh***, permanent injunctions also are inappropriate. AVRC requests permanent injunctions on its trademark infringement, false designation and false description, ACPA and California unfair competition claims on the basis of default judgment or summary judgment.[84] The court has set aside the entry of default and also finds that summary judgment is inappropriate, removing any basis for permanent injunctive relief. AVRC did not adequately brief summary judgment in its motion, making only cursory requests for judgment "based on the default . . . and/or based on Rule 56."[85] Furthermore, genuine disputes of material fact abound on the questions of

---

[82] *See* Docket No. 19 at 10.

[83] *Gardner v. Safeco Ins. Co. of Am.*, No. 14-CV-02024-JCS, 2014 WL 2568895, at *7 (N.D. Cal. June 6, 2014) (quoting *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1249 (1998)).

[84] *See* Docket No. 19 at 8.

[85] *See id.* at 2, 8, 12.

what AVRC's mark is and whether it is a valid distinctive or weak descriptive mark; whether there is a likelihood of confusion; and whether Sweeting's use of altovelo.com was in bad faith under the ACPA.

***Eighth***, an award of fees and costs to AVRC would be improper. Both the Lanham Act and the ACPA permit the court to award reasonable attorney's fees to the prevailing party in exceptional cases.[86] AVRC has neither prevailed nor shown that this trademark case is exceptional.

**IV.**

Defendants' motion to set aside default is GRANTED. Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED as to Sweeting and DENIED as to Rouleur. AVRC's motion for entry of judgment, summary judgment, permanent injunction, preliminary injunction and fees and costs is DENIED.

**SO ORDERED.**

Dated: September 17, 2015

PAUL S. GREWAL
United States Magistrate Judge

[86] *See* 15 U.S.C. § 1117(a).